UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW VERHINES,<br><br>          Plaintiff,<br><br>   v.<br><br>SHIRLEY N. WEBER, *in her official capacity as California Secretary of State*,<br><br>          Defendant. | Case No.  1:24-cv-01111-EPG<br><br>SCREENING ORDER ALLOWING PLAINTIFF'S FIRST AMENDMENT AND EQUAL PROTECTION CLAIMS TO PROCEED PAST SCREENING<br><br>(ECF No. 1) |

      Plaintiff Andrew Verhines proceeds *pro se* and *in forma pauperis* in this civil action. (ECF Nos. 1, 3). Generally, Plaintiff alleges that California's filing fee structure for candidates seeking to run for United States Congress violates the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.

      Upon review, the Court concludes that Plaintiff has sufficiently stated claims under the First Amendment and the Equal Protection Clause to proceed past the screening stage. Accordingly, the Court will allow these claims to proceed and will, in due course, issue an order providing service documents to Plaintiff that he must complete and return so that Defendant may be served.

\\\

\\\

1

## I. SCREENING REQUIREMENT

As Plaintiff is proceeding *in forma pauperis*, the Court screens the complaint under 28 U.S.C. § 1915. (ECF No. 3). The Court must dismiss a case that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i-iii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

## II. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff names California Secretary of State Shirley Weber, sued in her official capacity, as the sole Defendant in this case. Plaintiff alleges that California's filing fee structure to run for Congress violates the First Amendment and the Equal Protection Clause.

Plaintiff states that he is a Fresno, California resident who wishes to run for Congress but is unable to pay the filing fee equivalent to 1% of a Congressmember's $174,000 annual salary, *i.e.*, $1,740.[1] He asserts that he is the sole provider for a family of eight, including six children, and his total family income of less than $55,000 per year leaves him unable to afford this fee, which effectively excludes him from the electoral process based on his economic status.

---

[1] It appears that Plaintiff is referring to California Election Code § 8103(a)(2), which requires a fee paid to the Secretary of State of "[o]ne percent of the first-year salary for the office of Representative in Congress."

He acknowledges an alternative to paying the filing fee by collecting 2,000 signatures.[2] However, he contends that, as a full-time worker and the sole provider for his family, he does not have the time or resources to collect signatures. He states that wealthier candidates can afford to hire persons to assist in collecting signatures or pay the filing fee outright, which makes the signature alternative disproportionately burdensome for lower-income candidates.

Plaintiff attempted to run for Congress in 2022 and 2024 but could not pay the filing fee or collect the 2,000 signatures needed within the short time provided. He asserts that California's median household income is significantly lower than the salary of a United States Congressmember, making the filing fee disproportionately high for lower-income candidates. And this fee structure creates an undue economic barrier for poorer candidates, limiting their ability to run for office, violating the Equal Protection Clause of the Fourteenth Amendment and the First Amendment by restricting political participation based on financial resources. Plaintiff proposes an alternative fee structure of a flat $300 fee for all candidates.

As for relief, Plaintiff seeks a declaration that the current filing fee structure is unconstitutional as applied to low-income candidates, that the Court order the implementation of a $300 filing fee for all candidates, and that an injunction be issued prohibiting Defendant from enforcing the current filing fee requirements.

### III.     ANALYSIS OF PLAINTIFF'S COMPLAINT

Election-based restrictions implicate the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. *See Anderson v. Celebrezze*, 460 U.S. 780, 786 n.7 (1983) ("In this case, we base our conclusions directly on the First and Fourteenth Amendments and do not engage in a separate Equal Protection Clause analysis. We rely, however, on the analysis in a number of our prior election cases resting on the Equal Protection Clause of the Fourteenth Amendment."). The Court finds the following standards applicable to Plaintiff's case:

> [N]ot all election rules or practices impose constitutionally suspect burdens on the right to vote. *Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). Under our federal Constitution, "States retain the power to regulate their own elections," [*Burdick v. Takushi*, 504 U.S. 428, 433 (1992)], and states have long "enacted comprehensive and sometimes complex election codes,"

---

[2] It appears that Plaintiff is referring to California Election Code § 8106(a)(2), which permits a candidate to "submit a petition containing signatures of registered voters in lieu of a filing fee," specifically, "[f]or the office of . . . the United States House of Representatives, 2,000 signatures."

each of which "inevitably affects—at least to some degree—the individual's right to vote," *Anderson*, 460 U.S. at 788, 103 S.Ct. 1564. Because "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes," *Burdick*, 504 U.S. at 433, 112 S.Ct. 2059 (quoting *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974)), the Supreme Court has developed a "flexible standard" for assessing constitutional challenges to election rules, *id.* at 434, 112 S.Ct. 2059. That standard has come to be known as the "*Anderson/Burdick* framework," named after the two Supreme Court decisions that elucidated it— *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), and *Burdick v. Takushi*, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992). This flexible standard requires courts to balance the nature and extent of the alleged burden on the right to vote against the State's interest in maintaining its chosen system of election administration. *Ariz. Democratic Party v. Hobbs*, 18 F.4th 1179, 1187 (9th Cir. 2021).

> . . . .
> . . . [T]he standard requires us to first consider "the character and magnitude of the asserted injury" to voters' rights, before weighing that injury "against 'the precise interests put forward by the State as justifications for the burden imposed by its rule.'" [*Burdick*, 504 U.S. at 434] (quoting *Anderson*, 460 U.S. at 789, 103 S.Ct. 1564). If a plaintiff shows a "severe" burden on the right to vote, courts may uphold the challenged law or practice only if the State can show that it is "narrowly drawn to advance a state interest of compelling importance." *Id.* (quoting *Norman v. Reed*, 502 U.S. 279, 289, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992)). By contrast, laws that impose lesser burdens on the right to vote "trigger less exacting review." *Mecinas v. Hobbs*, 30 F.4th 890, 904 (9th Cir. 2022) (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358, 117 S.Ct. 1364, 137 L.Ed.2d 589 (1997)), *cert. denied*, ––– U.S. –––, 143 S. Ct. 525, 214 L.Ed.2d 300 (2022). Indeed, if a law "imposes only 'reasonable, nondiscriminatory restrictions' upon" voters' rights, "'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434, 112 S.Ct. 2059 (quoting *Anderson*, 460 U.S. at 788, 103 S.Ct. 1564).

*Election Integrity Project California, Inc. v. Weber*, 113 F.4th 1072, 1082–84 (9th Cir. 2024); *see Soltysik v. Padilla*, 910 F.3d 438, 444 (9th Cir. 2018) (applying the *Anderson/Burdick* framework to challenge to California Elections Code brought by candidate for public office).

With these standards in mind, the Court concludes that Plaintiff's allegations—that he is unable to afford to pay the filing fee to run for Congress or to obtain the 2,000 signatures needed to avoid paying the filing fee—sufficiently state a claim under the First Amendment and the Equal Protection Clause to proceed past the screening stage.

\\\
\\\

**IV.     ORDER**

For the reasons given, IT IS ORDERED that this case shall proceed on Plaintiff's First Amendment and Equal Protection Clause claims. The Court will issue an order in due course providing service documents to Plaintiff that he must complete and return.

IT IS SO ORDERED.

Dated:   **October 2, 2024**                          /s/ Erica P. Grosjean
                                                                UNITED STATES MAGISTRATE JUDGE