UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW VERHINES,<br><br>             Plaintiffs,<br><br>       v.<br><br>SHIRLEY N. WEBER,<br><br>             Defendant. | Case No.  1:24-cv-01111-KES-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT (1) DEFENDANT'S MOTION TO DISMISS BE DENIED; AND (2) PLAINTIFF'S MOTIONS FOR LEAVE TO FILE A SURREPLY BE DENIED AS UNNECESSARY<br><br>(ECF Nos. 14, 24, 26)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY (30) DAYS |

Plaintiff Andrew Verhines proceeds *pro se* and *in forma pauperis* in this civil action. (ECF Nos. 1, 3). He alleges that California's filing fee structure for candidates seeking to run in the primary for the office of House of Representatives in the United States Congress violates the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.

Defendant, California Secretary of State Shirley N. Weber, moves to dismiss this case with prejudice and without leave to amend under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff fails to state a claim upon which relief may be granted. (ECF No. 14). Plaintiff has filed an opposition (ECF No. 18); and Defendant has filed a reply (ECF No. 20). The assigned District Judge has referred the motion to the undersigned. (ECF No. 17).

Because Defendant's motion to dismiss presents premature arguments, and Plaintiff otherwise states a claim, the Court will recommend that Defendant's motion to dismiss be denied. Additionally, the Court will recommend that Plaintiff's motions seeking leave to file a surreply be denied as unnecessary.

The parties may file any objections within thirty days of service of these findings and recommendations.

## I.   BACKGROUND

### A.  Summary of Plaintiff's Complaint and the Court's Screening Order

On September 19, 2024, Plaintiff filed his complaint. (ECF No. 1). He alleges as follows:

Plaintiff is a Fresno, California resident who wishes to run for Congress but is unable to pay the filing fee equivalent to 1% of a Congressmember's $174,000 annual salary, *i.e.*, $1,740. As the sole provider for a family of eight, including six children, with a total family income of less than $55,000 per year, he is unable to afford this fee, which effectively excludes him from the electoral process based on his economic status.

He acknowledges an alternative to paying the filing fee by collecting 2,000 signatures. However, he contends that, as a full-time worker and the sole provider for his family, he does not have the time or resources to collect signatures. He states that wealthier candidates can afford to hire persons to assist in collecting signatures or pay the filing fee outright, which makes the signature alternative disproportionately burdensome for lower-income candidates.

Plaintiff attempted to run for Congress in 2022 and 2024 but contends that he could not pay the filing fee or collect the 2,000 signatures needed within the short time provided. He asserts that California's median household income is significantly lower than the salary of a United States Congressmember, making the filing fee disproportionately high for lower-income candidates. And this fee structure creates an undue economic barrier for poorer candidates, limiting their ability to run for office, violating the Equal Protection Clause of the Fourteenth Amendment and the First Amendment.

The Court screened Plaintiff's complaint on October 2, 2024. (ECF No. 7). After noting the relevant legal standards, the Court concluded that Plaintiff allegations sufficiently stated a claim under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.

### B. Summary of the Parties' Arguments

Defendant filed her motion to dismiss on January 6, 2025. Citing the legal framework discussed further below—the *Anderson/Burdick* framework—Defendant argues that "the burden state law imposes on [P]laintiff's First and Fourteenth Amendment rights is not severe, and the state has important regulatory interests served by the laws in question." (ECF No. 14, p. 6). More specifically, Defendant argues that "Plaintiff cannot show a severe burden because he has not demonstrated reasonable diligence in attempting to become a congressional candidate" and Ninth Circuit authority establishes that the burden imposed by California's election system is not severe. (*Id.* at 7). Further, Defendant asserts that California has important regulatory interests in limiting ballots to a reasonable size and requiring a preliminary showing of support for a candidate. (*Id.* at 8, 9).

Plaintiff's opposition, filed on January 16, 2025, argues that he exercised reasonable diligence in attempting to access the ballot, including by attempting to collect signatures to avoid paying the filing fee, and that Defendant's cited authority is distinguishable. (ECF No. 18, p. 2). Moreover, Plaintiff generally argues that California's regulatory interests do not justify the amount of the filing fee, or alternatively, the signatures needed to avoid paying the filing fee. (*Id.* at 3-4). In support of his motion to dismiss, Plaintiff cites to public record responses, which he claims show a 99.8% failure rate for candidates that try to use the signature process to avoid paying the filing fee. Moreover, he contends that California unjustifiably raised the signature requirement after one candidate succeeded in collecting the number of signatures needed.

Defendant's reply, filed on January 27, 2025, reiterates her arguments in favor of dismissal. (ECF No. 20). Additionally, Defendant argues that the Court should not consider evidence that Plaintiff provides outside the pleadings. (*Id.* at 2). However, Defendant argues that, even if the Court considers such evidence, Plaintiff's representations—*i.e.*, the alleged 99.8% failure rate for candidates using the signature method to avoid the filing fee and that California raised the signature requirement after one candidate successfully used this method—ignore relevant data or are simply incorrect. (*Id.* at 3).

\\\
\\\

3

## II. LEGAL STANDARDS

### A. Motion to Dismiss

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[T]he court must construe the complaint in the light most favorable to the plaintiff, taking all [of the plaintiff's] allegations as true and drawing all reasonable inferences from the complaint in [the plaintiff's] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Furthermore, Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002) (internal citation and quotation marks omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, a claim must be facially plausible, *i.e.*, the complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard is not akin to a "probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### B. Legal Claims

Election-based restrictions implicate the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. *See Anderson v. Celebrezze*, 460 U.S. 780, 786 n.7 (1983) ("In this case, we base our conclusions directly on the First and Fourteenth Amendments and do not engage in a separate Equal Protection Clause analysis. We rely, however, on the analysis in a

number of our prior election cases resting on the Equal Protection Clause of the Fourteenth Amendment."). The Court finds the following standards applicable:

> [N]ot all election rules or practices impose constitutionally suspect burdens on the right to vote. *Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). Under our federal Constitution, "States retain the power to regulate their own elections," [*Burdick v. Takushi*, 504 U.S. 428, 433 (1992)], and states have long "enacted comprehensive and sometimes complex election codes," each of which "inevitably affects—at least to some degree—the individual's right to vote," *Anderson*, 460 U.S. at 788, 103 S.Ct. 1564. Because "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes," *Burdick*, 504 U.S. at 433, 112 S.Ct. 2059 (quoting *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974)), the Supreme Court has developed a "flexible standard" for assessing constitutional challenges to election rules, *id.* at 434, 112 S.Ct. 2059. That standard has come to be known as the "*Anderson/Burdick* framework," named after the two Supreme Court decisions that elucidated it—*Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), and *Burdick v. Takushi*, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992). This flexible standard requires courts to balance the nature and extent of the alleged burden on the right to vote against the State's interest in maintaining its chosen system of election administration. *Ariz. Democratic Party v. Hobbs*, 18 F.4th 1179, 1187 (9th Cir. 2021).
>
> . . . .
>
> . . . [T]he standard requires us to first consider "the character and magnitude of the asserted injury" to voters' rights, before weighing that injury "against 'the precise interests put forward by the State as justifications for the burden imposed by its rule.'" [*Burdick*, 504 U.S. at 434] (quoting *Anderson*, 460 U.S. at 789, 103 S.Ct. 1564). If a plaintiff shows a "severe" burden on the right to vote, courts may uphold the challenged law or practice only if the State can show that it is "narrowly drawn to advance a state interest of compelling importance." *Id.* (quoting *Norman v. Reed*, 502 U.S. 279, 289, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992)). By contrast, laws that impose lesser burdens on the right to vote "trigger less exacting review." *Mecinas v. Hobbs*, 30 F.4th 890, 904 (9th Cir. 2022) (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358, 117 S.Ct. 1364, 137 L.Ed.2d 589 (1997)), *cert. denied*, ––– U.S. ––––, 143 S. Ct. 525, 214 L.Ed.2d 300 (2022). Indeed, if a law "imposes only 'reasonable, nondiscriminatory restrictions' upon" voters' rights, "'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434, 112 S.Ct. 2059 (quoting *Anderson*, 460 U.S. at 788, 103 S.Ct. 1564).

*Election Integrity Project California, Inc. v. Weber*, 113 F.4th 1072, 1082–84 (9th Cir. 2024); *see Soltysik v. Padilla*, 910 F.3d 438, 444 (9th Cir. 2018) (applying the *Anderson/Burdick* framework to challenge to California Elections Code brought by candidate for public office).

\\\

### III. ANALYSIS

#### A. Overview of Election Process

Before addressing the *Anderson/Burdick* framework, the Court summarizes the election system at issue.

To run for office, Plaintiff is required to pay a filing fee equivalent to 1% of a Congressmember's $174,000 annual salary, *i.e.*, $1,740. Cal. Elec. Code § 8103(a)(2) (requiring a fee paid to the Secretary of State of "[o]ne percent of the first-year salary for the office of Representative in Congress."). However, Plaintiff may alternatively submit 2,000 signatures in lieu of paying the filing fee. Cal. Elec. Code § 8106(a)(2) (permitting a candidate to "submit a petition containing signatures of registered voters in lieu of a filing fee," specifically, "[f]or the office of . . . the United States House of Representatives, 2,000 signatures."). Defendant states that candidates have 55 days to gather signatures before the declaration of candidacy and nomination papers are available.[1] A candidate may submit a total of 2000 signatures to avoid any filing fee; or may submit a combination of signatures and a filing fee as each signature is worth $0.87.[2] Cal. Elec. Code § 8106(b)(3) (providing for a pro rata portion of a filing fee to be paid to cover the lack of all required signatures).

A candidate must obtain nomination documents and has a maximum of 25 days[3] to gather between 40 to 60 signatures before filing nomination papers. Cal. Elec. Code § 8062(a)(2) (requiring signatures of "not fewer than 40 nor more than 60" registered voters for nomination papers). Signatures obtained towards the filing fee are counted towards the signatures needed for nomination papers. Cal. Elec. Code § 8106(d) ("All valid signatures obtained pursuant to this section shall be counted toward the number of voters required to sign a nomination paper in accordance with Section 8061 or 8405").

---

[1] Defendant cites California Election Code § 8106(b) to support her position that candidates have 55 days to gather signatures. While this provision discusses some deadlines in connection with the signature requirement, it does not plainly identify a 55-day period for obtaining signatures. Plaintiff does not challenge Defendant's contention, and the Court will assume that it is correct for purposes of this motion.

[2] The $0.87 figure is calculated by dividing the filing fee ($1,740) by the number of signatures required (2,000).

[3] Defendant cites California Election Code § 8062(a)(2) to support her position that candidates have 25 days to gather signatures. However, this provision does not provide a time limitation for obtaining signatures. Plaintiff does not challenge Defendant's contention, and the Court will assume that it is correct for purposes of this motion.

A person may also access the ballot as a write-in candidate and does not have to pay the filing fee. Cal. Elec. Code § 8064 ("No fee or charge shall be required of a write-in candidate except in the case of a candidate for city office, as provided in Section 10228."). However, the person still has to gather 40 to 60 signatures for the nomination papers. Cal. Elec. Code § 8600(b) (noting that a write-in candidate must obtain "[t]he requisite number of signatures on the nomination papers, if any, required pursuant to Sections 8062"). A write-in candidate has 43 days to obtain signatures for nomination papers. Cal. Elec. Code § 8601 ("The statement and nomination papers shall be available on the 57th day prior to the election for which the candidate is filing as a write-in candidate, and shall be delivered to the elections official responsible for the conduct of the election no later than the 14th day prior to the election.").

### B. Burden

Under the *Anderson/Burdick* framework discussed above, the Court must balance the burden placed by California's election process on Plaintiff's right to access the ballot against California's interest in maintaining its chosen election system. The Court first considers burden because "the severity of the burden [that] the election law imposes on the plaintiff's rights dictates the level of scrutiny applied by the court." *Nader v. Brewer*, 531 F.3d 1028, 1034 (9th Cir. 2008).

Defendant presents two arguments as to burden: (1) that Plaintiff cannot show a severe burden because he has not demonstrated reasonable diligence in attempting to access the ballot; and (2) caselaw from the Ninth Circuit establishes that the burden is not severe on Plaintiff to access the ballot. Plaintiff responds that he did exercise reasonable diligence in trying to access the ballot and that Defendant's caselaw is distinguishable.

The Ninth Circuit has "held that the burden on plaintiffs' rights should be measured by whether, in light of the entire statutory scheme regulating ballot access, 'reasonably diligent' candidates can normally gain a place on the ballot, or whether they will rarely succeed in doing so." *Id.* at 1035 (citation omitted). And "[t]o determine the severity of the burden, . . . past candidates' ability to secure a place on the ballot can inform the court's analysis." *Id.* (citation omitted).

Defendant argues that "Plaintiff's complaint demonstrates no attempt to comply with

California's statutory scheme to become a congressional candidate at the primary election," and thus he can establish no burden on his access to the ballot. (ECF No. 14, p. 8).[4] However, the Court agrees with Plaintiff that his complaint contains sufficient allegations that he attempted to comply with California's procedures. (ECF No. 18, p. 2). Notably, Plaintiff alleges that he cannot afford the filing fee given his specific financial situation, including that he is the sole provider of a family of eight people and has a total family income of less than $55,000 per year. (ECF No. 1, p. 2). While he acknowledges the alternative means to access the ballot by collecting signatures, he alleges that, because of his full-time work, he does not have the time to collect signatures, although he attempted to do so within the time provided, nor does he have the money to hire someone to help him collect signatures. (*Id.*).

Additionally, Plaintiff attempts to submit evidence to support his allegations of burden. For example, in his opposition, Plaintiff cites to public record responses, which he claims show a 99.8% failure rate for candidates that try to use the signature process to avoid paying the filing fee. (ECF No. 18, p. 1). Moreover, he contends that California unjustifiably raised the signature requirement after one candidate succeeded in collecting the number of signatures needed. (*Id.*). In response, Defendant argues that the data at issue are based on a "narrow request" and ignores other data. (ECF No. 20, p. 3). Similarly, Defendant argues that, contrary to Plaintiff's assertions, the raising of the signature requirement was for reasons unrelated to a candidate successfully obtaining a previously lower number of signatures. (*Id.* at 4-5).

---

[4] While the Court need not resolve this issue now, the Court notes that, to the extent that Defendant relies on the write-in method as an alternative means to access the ballot, caselaw suggests that this means may not be constitutionally adequate, at least in some circumstances. *Lubin v. Panish*, 415 U.S. 709, 719 n.5 (1974) ("It is suggested that a write-in procedure, under s 18600 et seq., without a filing fee would be an adequate alternative to California's present filing-fee requirement. The realities of the electoral process, however, strongly suggest that 'access' via write-in votes falls far short of access in terms of having the name of the candidate on the ballot. It would allow an affluent candidate to put his name before the voters on the ballot by paying a filing fee while the indigent, relegated to the write-in provision, would be forced to rest his chances solely upon those voters who would remember his name and take the affirmative step of writing it on the ballot. That disparity would, itself, give rise to constitutional questions and, although we need not decide the issue, the intimation that a write-in provision without the filing fee required by s 18600 et seq. would constitute 'an acceptable alternative' appears dubious at best.").

Generally, a court may not rely on evidence outside of pleadings when considering a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) ("When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond."). Although an exception applies when "documents [are] attached to the complaint, documents [are] incorporated by reference in the complaint, or [are] matters of judicial notice," none of these circumstances apply here. *Id.* at 908.

While the Court will not consider Plaintiff's evidence in assessing the burden,[5] the parties' dispute about this evidence demonstrates that it is premature to resolve Plaintiff's claim at this stage in the case. *See Soltysik*, 910 F.3d at 447–48 ("Here, because the district court dismissed his complaint, Soltysik never had the opportunity to develop such evidence, and on the record before us we cannot say as a matter of law that the "Party Preference: None" designation is a sufficiently unobtrusive means of clarifying to voters that Soltysik's preferred political body does not qualify as a "party" under California election law."). Indeed, the Ninth Circuit has noted that it is premature to dispose of such cases at the motion-to-dismiss stage when the record lacks evidence to support a full *Anderson/Burdick* analysis. *See Mecinas v. Hobbs*, 30 F.4th 890, 904–05 (9th Cir. 2022) ("The Secretary urges us to deem 'any burden' imposed by the Statute as 'negligible' and thus justified by the state's interest in 'establish[ing] a manageable ballot layout.' But the magnitude of the asserted injury is a function of the 'primacy effect,' presenting factual questions that cannot be resolved on a motion to dismiss."); *Soltysik*, 910 F.3d at 450 ("Lacking any evidence showing the true extent of the burden on candidates like Soltysik and the weightiness of California's interests in imposing that burden, we find ourselves in the position of Lady Justice: blindfolded and stuck holding empty scales.") (citation and quotation marks omitted).

---

[5] Plaintiff has filed two motions for leave to file a surreply. (ECF Nos. 21, 23, 24, 26). Mainly, Plaintiff wishes to address the arguments in Defendant's reply that concern the alleged 99.8% failure rate for candidates using the signature method to avoid the filing fee and California allegedly raising the signature requirement after one candidate successfully used this method. Defendant opposed the first motion to file a surreply, but has not filed any timely opposition to his second motion. (ECF No. 25); *see* Local Rule 230(c). The Court recommends that Plaintiff's motions for leave to file a surreply be denied as unnecessary because, as described above, it is premature to evaluate the evidence regarding Plaintiff's claim at the motion to dismiss stage.

Defendant also argues that Plaintiff's claims fail as a matter of law under the Ninth Circuit's decision in *Andress v. Reed*, 880 F.2d 239 (9th Cir. 1989). In that case, a candidate for United States Senator argued that his civil rights were violated when he was denied certification on the ballot because he could not afford the $1502 or afford to pay signature gatherers to obtain 10,000 signatures in lieu of paying the filing fee as provided under California Elections Code § 6555 (since repealed). *Id.* at 240. The district court granted summary judgment for the defendant, and the Ninth Circuit affirmed, finding "the requirement that Andress collect 10,000 signatures within approximately forty-five days [was] reasonable and constitutionally adequate" and that "Andress does not contend he was denied the opportunity to prepare and file the nominating petitions," and, moreover, "the California statute does not require that only paid solicitors may gather the signatures." *Id.* at 242. Based on *Andress*, Defendant argues that "[t]he burdens imposed by state law are even less in this case, where plaintiff could either pay a $1,740 filing fee, submit 2,000 signatures in lieu of the filing fee, some combination thereof, or pay nothing as a write-in candidate." (ECF No. 14, pp. 5-6).

Plaintiff argues that this case is distinguishable, generally because the election system at issue in that case was different that the one here. (ECF No. 18, p. 3).

Upon consideration, the Court concludes that *Andress* does not dispose of this case. As an initial matter, it is important to note that "context-specific analysis [is needed] in ballot access cases." *Arizona Green Party v. Reagan*, 838 F.3d 983, 990 (9th Cir. 2016). The *Anderson/Burdick* framework "rests on the specific facts of a particular election system, not on 'strained analog[ies]' to past cases." *Id.* (citation omitted). In an analogous context, the Ninth Circuit has concluded, "[t]hat filing deadlines of similar lengths may prove unconstitutionally burdensome in the context of some election schemes does not eliminate the need for evidence that a severe burden was imposed by the filing deadline in *this* case." *Id.*

The same holds true here. *Andress* is a decision from 1989 that addresses a different political office, different signature requirements, and an overall different election system than the one at issue here. Among other things, there may be significant differences in the pool of persons from whom signatures can be obtained—*i.e.*, Plaintiff may have a much smaller number of persons to obtain signatures from. *See Arizona Democratic Party*, 18 F.4th at 1190 (noting that

burdens placed on an identifiable segment, including the less affluent segment of the community, "are more likely to raise constitutional concerns"); *Anderson*, 460 U.S. at 792 (noting that signature-gathering efforts in advance of general election posed difficulties on candidate). At this stage of the proceedings, the Court cannot conclude that, as a matter of law, it disposes of the unique issues presented here. *See Arizona Green Party*, 838 F.3d at 991 (noting that it would be "in a most unusual circumstance" that a court could deem a ballot regulation unconstitutional on its face without further evidence).

Thus, the Court concludes that the complaint sufficiently pleads a severe burden on Plaintiff's right to access the ballot and Defendant's motion to dismiss should be denied on this basis.

### C. California's Interests

Notably, "an election regulation that imposes a severe burden is subject to strict scrutiny and will be upheld only if it is narrowly tailored to serve a compelling state interest." *Nader*, 531 F.3d at 1035 (citation omitted). In support of California's election system, Defendant cites California's interests in having manageable ballots and in requiring candidates to make a preliminary showing of support to qualify for the ballot. (ECF No. 14, pp. 8-9). Plaintiff does not dispute that these are valid interests, however, he generally indicates they are not narrowly tailored. (ECF No. 18, pp. 3-4).

Once again, the Court concludes that Defendant's argument does not warrant dismissal at this stage in the proceedings. The Court finds instructive the following discussion from the Ninth Circuit in declining to dismiss a case, in part, based on the lack of evidence to justify state interests:

> We also disagree with the notion that a state is categorically "not required to make an evidentiary showing of its interests." *Post* at 460. We acknowledge, as we must, that a state need not offer "elaborate, empirical verification" that voter confusion in fact occurs, *Timmons*, 520 U.S. at 364, 117 S.Ct. 1364, particularly where the burden a challenged regulation imposes on a plaintiff's associational rights is slight or minimal. But we cannot agree that "[e]ven a speculative concern of voter confusion is sufficient" *as a matter of law* to justify *any* regulation that burdens a plaintiff's rights, *post* at 449 (bracket omitted) (quoting *Stone v. Bd. of Election Comm'rs*, 750 F.3d 678, 685 (7th Cir. 2014)), especially where that burden is more than de minimis. If the *Anderson/Burdick* framework is to remain a sliding-scale, "means-end fit analysis," *Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019,

> 1024 (9th Cir. 2016) (en banc), that from time to time "require[s] an assessment of whether alternative methods would advance the proffered governmental interests," *Dudum*, 640 F.3d at 1114 n.27, then a state must sometimes be required to offer evidence that its regulation of the political process is a reasonable means of achieving the state's desired ends. *See, e.g., Ariz. Green Party*, 838 F.3d at 990 ("Analogy and rhetoric are no substitute for evidence ...."); *cf., e.g., Latta v. Otter*, 771 F.3d 456, 469 (9th Cir. 2014) (refusing to take legislative justifications at face value when applying heightened scrutiny to policies that "implicate constitutional rights"). Permitting a state to justify *any* non-severe voting regulation with a merely "speculative concern of voter confusion," *post* at 448 (bracket omitted) (quoting Stone, 750 F.3d at 685), would convert *Anderson/Burdick*'s means-end fit framework into ordinary rational-basis review wherever the burden a challenged regulation imposes is less than severe. We have already rejected such an approach. *Pub. Integrity All.*, 836 F.3d at 1024–25.

*Soltysik*, 910 F.3d at 448–49.

As explained above, further proceedings are needed to be able to determine the burden posed by California's election system, which in turn will inform the weighing of that burden against California's interests. Likewise, evidence may be needed to support California's interests. *See Mecinas*, 30 F.4th at 905 ("And given that Arizona's asserted interest in a manageable ballot could seemingly be effectuated through a nondiscriminatory ordering system, judgment in the Secretary's favor is premature at this juncture.") (citation and quotation marks omitted).

In short, the Court cannot conclude, at this stage of the proceedings, that California's interests in maintaining its election system outweigh the burden imposed by that system.

## IV. CONCLUSION AND RECOMMENDATIONS

Based on the above discussion, IT IS RECOMMENDED as follows:

1. Defendant's motion to dismiss be denied. (ECF No. 14).
2. Plaintiff's motions for leave to file a surreply be denied as unnecessary. (ECF Nos. 24, 26).

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within thirty (30) days after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the

1  objections. Further, any objections shall be limited to no more than fifteen (15) pages, including
2  exhibits. The parties are advised that failure to file objections within the specified time may result
3  in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing
4  *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **March 11, 2025**                          /s/ Erica P. Grosjean
                                                    UNITED STATES MAGISTRATE JUDGE