UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW VERHINES, | Case No.  1:24-cv-01111-KES-EPG |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT'S MOTION TO DISMISS BE DENIED |
| v. | |
| SHIRLEY N. WEBER, | (ECF No. 62) |
| Defendant. | OBJECTIONS, IF ANY, DUE WITHIN THIRTY (30) DAYS |

Plaintiff Andrew Verhines proceeds *pro se* and *in forma pauperis* in this civil action. (ECF Nos. 1, 3, 61). Plaintiff challenges the constitutionality of California's requirements to qualify as a candidate for U.S. Congress in California's 21st Congressional District. He claims that he desires to run in the 2026 election but is effectively barred by California's filing-fee and signature-in-lieu requirements. Now before the Court is Defendant, California Secretary of State Shirley N. Weber's motion to dismiss Plaintiff's second amended complaint. (ECF No. 62).

Notably, the assigned District Judge has already granted Plaintiff leave to file his second amended complaint, over Defendant's opposition, and ordered that Plaintiff may proceed on his First Amendment and Equal Protection Clause claims. (ECF No. 60, p. 2) ("Plaintiff's motion for leave to file a second amended complaint, Doc. 54, is GRANTED IN PART insofar as plaintiff is permitted to file the second amended complaint to proceed only on his First Amendment and Equal Protection Clause claims regarding California's filing-fee and signature-in-lieu requirements as set forth in his lodged second amended complaint.").

1

Because the Court again finds that the allegations in Plaintiff's second amended complaint are sufficient to state a claim that California's filing-fee and signature-in-lieu requirements violate Plaintiff's rights under the First Amendment and the Equal Protection Clause, the Court recommends denying Defendant's motion to dismiss.

## I.      BACKGROUND

### A.  Procedural History

On September 19, 2024, Plaintiff filed his complaint. (ECF No. 1).

On October 2, 2024, the Court issued a screening order that concluded that Plaintiff stated a claim under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. (ECF No. 7). In that order, the Court reviewed the relevant legal standards in depth, including the *Anderson/Burdick* framework to challenge the relevant California Elections Code provisions, and found that "Plaintiff's allegations—that he is unable to afford to pay the filing fee to run for Congress or to obtain the 2,000 signatures needed to avoid paying the filing fee— sufficiently state a claim under the First Amendment and the Equal Protection Clause to proceed past the screening stage." (ECF No. 7, at p. 4).

After Defendant was served with the complaint, the parties engaged in additional litigation and, on July 28, 2025, Plaintiff filed a motion for leave to file his second amended complaint. (ECF Nos. 40, 54). Defendant filed an opposition to the motion on August 7, 2025, arguing that leave to amend should be denied because it would be futile. (ECF No. 56).

On September 18, 2025, the Court issued findings and recommendations recommending, in relevant part, that Plaintiff be permitted to proceed only on his First Amendment and Equal Protection Clause claims regarding California's filing-fee and signature-in-lieu requirements based on the allegations in the second amended complaint. (ECF No. 59).

The assigned District Judge adopted the findings and recommendations in full, and ordered that "[t]his case proceeds on the second amended complaint only on plaintiff's First Amendment and Equal Protection Clause claims regarding California's filing-fee and signature-in-lieu requirements." (ECF Nos. 60, p. 2).

### B.  Defendant's Motion to Dismiss

Rather than respond to Plaintiff's second amended complaint, Defendant filed a motion to

dismiss on January 16, 2026. (ECF No. 62). Defendant argues that Plaintiff's claims fail "under the *Anderson/Burdick* framework . . . because Plaintiff's burdens are minimal and California has important, well-settled, 'too obvious,' regulatory interests in the ballot access laws being challenged." (*Id.* at 12). Additionally, Defendant argues that "*Andress v. Reed*, 880 F.2d 239 (9th Cir. 1989) establishes that ballot access laws requiring either payment of a filing fee or sufficient signatures on a petition in lieu of a filing fee are constitutional." (*Id.* at 11).

Plaintiff filed his opposition on January 23, 2026. (ECF No. 64). Citing his allegations that "the State's own records show a near-total failure rate" for candidates trying to access the ballot by obtaining signatures in lieu of paying the filing fee, he argues that California's system is unconstitutional. (*Id.* at 2). He also argues that *Andress* is distinguishable and does not dispose of his case. (*Id.*).

Defendant's reply, filed on February 2, 2026, reiterates her arguments in favor of dismissal. (ECF No. 65).

## II.    PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff alleges in his second amended complaint that he is a resident of Fresno County, California and "[h]e is the sole provider for a family of eight and has an annual income under $55,000." (ECF No. 61, p. 1). He "attempted to qualify as a candidate for U.S. Congress in California's 21st Congressional District in both 2022 and 2024 but was excluded from the ballot due to inability to pay the filing fee or meet the alternative signature requirement." (*Id.*). "He intends to run in the 2026 election but remains effectively barred by California's ballot access laws . . . ." (*Id.*).

"For the 2024 election, the required filing fee was $1,740" or "equal to 1 % of the first-year salary of the office sought." (*Id.* at 2). The state allows a candidate to submit 2,000 valid signatures in lieu of paying this fee. However, Plaintiff was unable to obtain the signatures. "Plaintiff personally attempted to collect signatures in both 2022 and 2024. He invested over 20 hours across multiple methods, including door-to-door outreach, social media engagement, and public tabling. Despite his efforts, he collected only 40-60 valid signatures each cycle-rendering the waiver inaccessible." (*Id.*). Similarly, he alleges that he "attempted to meet the requirement through substantial good-faith efforts but was unsuccessful. Had he possessed the financial

3

resources to pay the fee outright, his candidacy would have proceeded—highlighting the discriminatory effect of the current scheme." (*Id.* at 3).

Further, he alleges that all candidates—except one—in recent election cycles were unable to access the ballot using the signature-in-lieu requirement. "[P]ublic records obtained by Plaintiff from the Secretary of State (Exhibit A) show that only one out of 506 congressional candidates over the past two election cycles successfully obtained a full filing fee waiver through this method-a documented failure rate of 99.8%." (*Id.* at 2). Plaintiff attaches documents to his complaint concerning public records requests in support of this allegation. (*Id.* at 5-10).

Plaintiff alleges that California's filing fee structure violates his First and Fourteenth Amendment rights. (*Id.* at 3). And he seeks a declaration that it violates these rights and injunctive relief prohibiting its enforcement. (*Id.* at 4).

### III.    LEGAL STANDARDS

#### A.  Motion to Dismiss

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[T]he court must construe the complaint in the light most favorable to the plaintiff, taking all [of the plaintiff's] allegations as true and drawing all reasonable inferences from the complaint in [the plaintiff's] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Furthermore, Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002) (internal citation and quotation marks omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, a claim must be facially plausible, *i.e.*, the complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard is not akin to a "probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### B. First and Fourteenth Amendments

Election-based restrictions implicate the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. *See Anderson v. Celebrezze*, 460 U.S. 780, 786 n.7 (1983) ("In this case, we base our conclusions directly on the First and Fourteenth Amendments and do not engage in a separate Equal Protection Clause analysis. We rely, however, on the analysis in a number of our prior election cases resting on the Equal Protection Clause of the Fourteenth Amendment.").

As the Court explained in its screening order, the Court finds the following standards applicable:

[N]ot all election rules or practices impose constitutionally suspect burdens on the right to vote. *Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). Under our federal Constitution, "States retain the power to regulate their own elections," [*Burdick v. Takushi*, 504 U.S. 428, 433 (1992)], and states have long "enacted comprehensive and sometimes complex election codes," each of which "inevitably affects—at least to some degree—the individual's right to vote," *Anderson*, 460 U.S. at 788, 103 S.Ct. 1564. Because "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes," *Burdick*, 504 U.S. at 433, 112 S.Ct. 2059 (quoting *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974)), the Supreme Court has developed a "flexible standard" for assessing constitutional challenges to election rules, *id.* at 434, 112 S.Ct. 2059. That standard has come to be known as the "*Anderson/Burdick* framework," named after the two Supreme Court decisions that elucidated it— *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), and *Burdick v. Takushi*, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992). This flexible standard requires courts to balance the nature and extent of the alleged burden on the right to vote against the State's interest in maintaining its chosen system of election administration. *Ariz. Democratic Party v. Hobbs*, 18 F.4th 1179, 1187 (9th Cir. 2021).

. . . .

. . . [T]he standard requires us to first consider "the character and magnitude of the asserted injury" to voters' rights, before weighing that injury

5

"against 'the precise interests put forward by the State as justifications for the burden imposed by its rule.'" [*Burdick*, 504 U.S. at 434] (quoting *Anderson*, 460 U.S. at 789, 103 S.Ct. 1564). If a plaintiff shows a "severe" burden on the right to vote, courts may uphold the challenged law or practice only if the State can show that it is "narrowly drawn to advance a state interest of compelling importance." *Id.* (quoting *Norman v. Reed*, 502 U.S. 279, 289, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992)). By contrast, laws that impose lesser burdens on the right to vote "trigger less exacting review." *Mecinas v. Hobbs*, 30 F.4th 890, 904 (9th Cir. 2022) (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358, 117 S.Ct. 1364, 137 L.Ed.2d 589 (1997)), *cert. denied*, —— U.S. ——, 143 S. Ct. 525, 214 L.Ed.2d 300 (2022). Indeed, if a law "imposes only 'reasonable, nondiscriminatory restrictions' upon" voters' rights, "'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434, 112 S.Ct. 2059 (quoting *Anderson*, 460 U.S. at 788, 103 S.Ct. 1564).

*Election Integrity Project California, Inc. v. Weber*, 113 F.4th 1072, 1082–84 (9th Cir. 2024); *see Soltysik v. Padilla*, 910 F.3d 438, 444 (9th Cir. 2018) (applying the *Anderson/Burdick* framework to challenge to California Elections Code brought by candidate for public office).

Additionally, the Court notes that the Supreme Court has cautioned against viewing pleadings differently based on the classification of a constitutional challenge as facial or as-applied because this "invites pleading games" as such distinctions can be "amorphous." *Bucklew v. Precythe*, 587 U.S. 119, 139 (2019) (citation omitted). *See also Mi Familia Vota v. Hobbs*, 608 F. Supp. 3d 827, 839 (D. Ariz. 2022) (noting in case involving challenge to voting laws that "[t]he State is not entitled to dismissal based on its arguments related to facial versus as-applied challenges").

## IV.    ANALYSIS

### A.  Overview of Election Process

Before addressing the *Anderson/Burdick* framework, the Court summarizes the election system at issue.

To run for office, Plaintiff is required to pay a filing fee equivalent to 1% of a Congressmember's $174,000 annual salary, *i.e.*, $1,740. Cal. Elec. Code § 8103(a)(2) (requiring a fee paid to the Secretary of State of "[o]ne percent of the first-year salary for the office of Representative in Congress."). However, Plaintiff may alternatively submit 2,000 signatures in lieu of paying the filing fee. Cal. Elec. Code § 8106(a)(2) (permitting a candidate to "submit a petition containing signatures of registered voters in lieu of a filing fee," specifically, "[f]or the

office of . . . the United States House of Representatives, 2,000 signatures."). Candidates have 55 days to gather signatures before the declaration of candidacy and nomination papers are available.[1] A candidate may submit a total of 2000 signatures to avoid any filing fee; or may submit a combination of signatures and a filing fee as each signature is worth $0.87.[2] Cal. Elec. Code § 8106(b)(3) (providing for a pro rata portion of a filing fee to be paid to cover the lack of all required signatures).

A candidate must obtain nomination documents and has a maximum of 25 days[3] to gather between 40 to 60 signatures before filing nomination papers. Cal. Elec. Code § 8062(a)(2) (requiring signatures of "not fewer than 40 nor more than 60" registered voters for nomination papers). Signatures obtained towards the filing fee are counted towards the signatures needed for nomination papers. Cal. Elec. Code § 8106(d) ("All valid signatures obtained pursuant to this section shall be counted toward the number of voters required to sign a nomination paper in accordance with Section 8061 or 8405").

A person may also access the ballot as a write-in candidate and does not have to pay the filing fee. Cal. Elec. Code § 8064 ("No fee or charge shall be required of a write-in candidate except in the case of a candidate for city office, as provided in Section 10228."). However, the person still has to gather 40 to 60 signatures for the nomination papers. Cal. Elec. Code § 8600(b) (noting that a write-in candidate must obtain "[t]he requisite number of signatures on the nomination papers, if any, required pursuant to Sections 8062"). A write-in candidate has 43 days to obtain signatures for nomination papers. Cal. Elec. Code § 8601 ("The statement and nomination papers shall be available on the 57th day prior to the election for which the candidate is filing as a write-in candidate, and shall be delivered to the elections official responsible for the conduct of the election no later than the 14th day prior to the election.").

### B. Discussion

The Court recommends denying the motion to dismiss based on the same reasoning set

---

[1] This number is based on interconnected provisions, which determine the amount of time to obtain signatures. *See* California Election Code § 8106(b) and (b)(3) and § 8020(b).

[2] The $0.87 figure is calculated by dividing the filing fee ($1,740) by the number of signatures required (2,000).

[3] This number is based on the time that nomination forms are available, 113 days prior to the primary election, subtracting the time to submit them, 88 days prior to the election, *i.e.*, 113-88 equals 25 days. *See* California Election Code § 8020(b).

forth in its screening order and its recommendation to grant Plaintiff leave to file this second amended complaint, over Defendant's opposition. Notably, Plaintiff's factual allegations in the second amended complaint sufficiently state a claim to proceed past the pleading stage.

Plaintiff's second amended complaint alleges:

> [P]ublic records obtained by Plaintiff from the Secretary of State (Exhibit A) show that only one out of 506 congressional candidates over the past two election cycles successfully obtained a full filing fee waiver through this method-a documented failure rate of 99.8%.
>
> Plaintiff personally attempted to collect signatures in both 2022 and 2024. He invested over 20 hours across multiple methods, including door-to-door outreach, social media engagement, and public tabling. Despite his efforts, he collected only 40-60 valid signatures each cycle-rendering the waiver inaccessible.

(ECF No. 61, p. 2).

While Defendant argues that Plaintiff has not alleged a severe burden because he has not sufficiently alleged reasonable diligence in attempting to access the ballot, the Court disagrees. The Ninth Circuit has "held that the burden on plaintiffs' rights should be measured by whether, in light of the entire statutory scheme regulating ballot access, 'reasonably diligent' candidates can normally gain a place on the ballot, or whether they will rarely succeed in doing so." *Nader v. Brewer*, 531 F.3d 1028, 1035 (citation omitted). And "[t]o determine the severity of the burden, . . . past candidates' ability to secure a place on the ballot can inform the court's analysis." *Id.* (citation omitted). Plaintiff's allegations concerning his and other candidates' inability to obtain a fee waiver through the signature-in-lieu method sufficiently allege a severe burden on the right to vote.

Defendant also argues that "[t]he ballot-access laws being challenged in this case prevent frivolous, fraudulent, and nonserious candidacies, promote efficiency, and avoid voter confusion and overcrowding of the ballot" and, thus, it need not proffer evidence regarding its interest in maintaining its chosen system of election administration. (ECF No. 62, pp. 19-20). Again, the Court disagrees. As the Ninth Circuit has noted:

> We also disagree with the notion that a state is categorically "not required to make an evidentiary showing of its interests." *Post* at 460. We acknowledge, as we must, that a state need not offer "elaborate, empirical verification" that voter confusion in fact occurs, *Timmons*, 520 U.S. at 364, 117 S.Ct. 1364, particularly where the burden a challenged regulation imposes on a plaintiff's associational rights is slight or minimal. But we cannot agree that "[e]ven a speculative concern of voter

confusion is sufficient" *as a matter of law* to justify *any* regulation that burdens a plaintiff's rights, *post* at 449 (bracket omitted) (quoting *Stone v. Bd. of Election Comm'rs*, 750 F.3d 678, 685 (7th Cir. 2014)), especially where that burden is more than de minimis. If the *Anderson/Burdick* framework is to remain a sliding-scale, "means-end fit analysis," *Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1024 (9th Cir. 2016) (en banc), that from time to time "require[s] an assessment of whether alternative methods would advance the proffered governmental interests," *Dudum*, 640 F.3d at 1114 n.27, then a state must sometimes be required to offer evidence that its regulation of the political process is a reasonable means of achieving the state's desired ends. *See, e.g., Ariz. Green Party*, 838 F.3d at 990 ("Analogy and rhetoric are no substitute for evidence ...."); *cf., e.g., Latta v. Otter*, 771 F.3d 456, 469 (9th Cir. 2014) (refusing to take legislative justifications at face value when applying heightened scrutiny to policies that "implicate constitutional rights"). Permitting a state to justify *any* non-severe voting regulation with a merely "speculative concern of voter confusion," *post* at 448 (bracket omitted) (quoting *Stone*, 750 F.3d at 685), would convert *Anderson/Burdick*'s means-end fit framework into ordinary rational-basis review wherever the burden a challenged regulation imposes is less than severe. We have already rejected such an approach. *Pub. Integrity All.*, 836 F.3d at 1024–25.

*Soltysik*, 910 F.3d at 448–49; *see Mecinas*, 30 F.4th at 905 ("And given that Arizona's asserted interest in a manageable ballot could seemingly be effectuated through a nondiscriminatory ordering system, judgment in the Secretary's favor is premature at this juncture.") (citation and quotation marks omitted). In short, the Court finds that it is not clear on the face of the complaint that the State's interest in maintaining its chosen system of election administration outweighs the burden on the right to vote.

Lastly, the Court rejects Defendant's argument that Plaintiff's claims fail as a matter of law under the Ninth Circuit's decision in *Andress v. Reed*, 880 F.2d 239 (9th Cir. 1989). (ECF No. 62, p. 12). In that case, a candidate for United States Senator argued that his civil rights were violated when he was denied certification on the ballot because he could not afford the $1502 or afford to pay signature gatherers to obtain 10,000 signatures in lieu of paying the filing fee as provided under California Elections Code § 6555 (since repealed). *Id.* at 240. The district court granted summary judgment for the defendant, and the Ninth Circuit affirmed, finding "the requirement that Andress collect 10,000 signatures within approximately forty-five days [was] reasonable and constitutionally adequate" and that "Andress does not contend he was denied the opportunity to prepare and file the nominating petitions," and, moreover, "the California statute does not require that only paid solicitors may gather the signatures." *Id.* at 242.

9

The Court finds that *Andress* does not resolve the constitutional issue in this case at this stage in the case. *Andress* is a decision from 1989 that addresses a different political office, different signature requirements, and an overall different election system than the one at issue here. As the Ninth Circuit has cautioned, "context-specific analysis [is needed] in ballot access cases." *Arizona Green Party v. Reagan*, 838 F.3d 983, 990 (9th Cir. 2016) ("Analogy and rhetoric are no substitute for evidence, particularly where there are significant differences" in the election systems at issue; rather, the constitutionality of a system "rests on the specific facts of a particular election system.") (citation omitted). Moreover, "[t]hat filing deadlines of similar lengths may prove unconstitutionally burdensome in the context of some election schemes does not eliminate the need for evidence that a severe burden was imposed by the filing deadline in *this* case." *Id.*; *see Feldman v. Arizona Sec'y of State's Off.*, 843 F.3d 366, 387 (9th Cir. 2016) (noting that "constitutional challenges to election laws cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions.") (quotation marks and citation omitted). Among other things, there may be significant differences in the pool of persons from whom signatures can be obtained—*i.e.*, Plaintiff may have a much smaller number of persons to obtain signatures from. *See Arizona Democratic Party*, 18 F.4th at 1190 (noting that burdens placed on an identifiable segment, including the less affluent segment of the community, "are more likely to raise constitutional concerns"); *Anderson*, 460 U.S. at 792 (noting that signature-gathering efforts in advance of general election posed difficulties on candidate).

Thus, the Court cannot conclude that, based solely on the allegations in Plaintiff's second amended complaint, the burden posed by California's qualifications for this elected office are outweighed by the State's interest and thus are constitutional. *See Arizona Green Party*, 838 F.3d at 991 (noting that it would be "in a most unusual circumstance" that a court could deem a ballot regulation unconstitutional on its face without further evidence).

## V.   CONCLUSION AND RECOMMENDATIONS

For the foregoing reasons, IT IS RECOMMENDED that Defendant's motion to dismiss be denied. (ECF No. 62).

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within

thirty (30) days after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. Further, any objections shall be limited to no more than fifteen (15) pages, including exhibits. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **February 12, 2026**                    /s/ *Erica P. Grosjean*
                                                    UNITED STATES MAGISTRATE JUDGE

11