UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW VERHINES,<br>Plaintiff,<br>v.<br>SHIRLEY N. WEBER,<br>Defendant. | No. 1:24-cv-01111-KES-EPG<br><br>ORDER DECLINING TO ADOPT FINDINGS AND RECOMMENDATIONS AND GRANTING MOTION TO DISMISS<br><br>Docs. 62. 66 |

Plaintiff Andrew Verhines proceeds pro se and in forma pauperis in this civil action. He asserts that California's signature-in-lieu requirements for candidates seeking to run for a seat in the House of Representatives in the United States Congress violate the First and the Fourteenth Amendments.

Defendant Shirley N. Weber filed a motion to dismiss plaintiff's second amended complaint. Doc. 62. The motion was referred to a United States magistrate judge for the preparation of findings and recommendations. Doc. 63. The assigned magistrate judge issued findings and recommendations, recommending that defendant's motion to dismiss be denied. Doc. 66. Defendant filed objections, to which plaintiff responded. Docs. 70, 71.

In accordance with 28 U.S.C. § 636(b)(1), the Court has conducted a de novo review of the case. For the reasons set forth below, the Court declines to adopt the findings and

recommendations and grants defendant's motion to dismiss.

**I. CALIFORNIA'S SIGNATURE-IN-LIEU PROCESS**

The California Election Code provides that an individual seeking to run for office may either pay the filing fee or, alternatively, submit the required number of signatures in lieu of paying the filing fee. Cal. Elec. Code §§ 8103(a)(2); 8106(a)(2). The filing fee to run for a House seat is equal to 1% of the first-year salary of a congressmember. Cal. Elec. Code § 8103(a)(2). Alternatively, the individual may collect 2,000 signatures in lieu of paying the filing fee.[1] Cal. Elec. Code § 8106(a)(2), (b); Cal. Elec. Code § 8020(b). Additionally, every candidate must gather "not fewer than 40 nor more than 60" signatures before filing a nomination paper. Cal. Elec. Code § 8062(a)(2). These 40 to 60 signatures also count toward the 2,000 signatures required in lieu of paying the filing fee. Cal. Elec. Code § 8106(d).

California also allows an individual to run for office as a write-in candidate. Cal. Elec. Code § 8600. To run as a write-in candidate, the individual does not need to pay a filing fee but is required to gather between 40 and 60 signatures to file the nomination papers. Cal. Elec. Code §§ 8600, 8062(a)(2).

**II. BACKGROUND**

Plaintiff asserts that he seeks to be on the ballot to run for a House seat in the U.S. Congress. *See* Doc. 61. Plaintiff alleges in count one that California's ballot access laws have barred him from the ballot due to his inability to pay the filing fee or meet the alternative signature requirements. *See Id.* at 3.[2] Plaintiff asserts that Cal. Elec. Code § 8103 and § 8106 violate the First and Fourteenth Amendments. Doc. 61. He seeks a declaratory judgment and injunctive relief. *Id.* at 4.

---

[1] As the findings and recommendations note, the signatures must be collected over a 55-day period. *See* Doc. 66 at 7; Cal. Elec. Code §§ 8106(b), 8020(b).

[2] Plaintiff also asserts in a second count that the required fee to include a candidate statement in California's voter guide—$25 per word, or approximately $2,500–$5,000 for a 100-to-200-word candidate statement—is constitutionally excessive. *See* Doc. 61 at 3. But the court previously dismissed that claim, and plaintiff was not granted leave to amend as to that claim in his second amended complaint. *See* Doc. 60.

Plaintiff alleges that "only one out of 506 congressional candidates over the past two election cycles successfully obtained a full filing fee waiver [through the signature-in-lieu method.]" Doc. 61 at 2. Plaintiff asserts this means there was "a documented failure rate of 99.8%." *Id.* He also asserts that he "invested over 20 hours across multiple methods" in both 2022 and 2024, but he could not meet the waiver requirement because he was able to collect only 40 to 60 valid signatures each cycle. *Id.*

In her motion to dismiss, defendant argues that plaintiff fails to state a claim regarding the filing fee and signature-in-lieu requirements because the allegations in the second amended complaint confirm that plaintiff failed to make a diligent effort to collect signatures, and plaintiff fails to include any factual allegations supporting his conclusory assertion that individuals seeking to use the signature-in-lieu process had a high failure rate. Doc. 62. Defendant notes that plaintiff alleges he spent some 20 hours collecting signatures each cycle, which would mean plaintiff invested on average only 22 minutes per day to collect signatures over the 55-day collection period. *Id.* at 21.

As to plaintiff's claimed "99.8% failure rate," defendant notes this conclusory statement is unsupported by plaintiff's factual allegations. Doc. 62. While plaintiff alleges that there were 506 congressional candidates in California over the 2022 and 2024 cycles, and that one of them successfully used the signature-in-lieu process, there is no allegation as to how many congressional candidates attempted to use the signature-in-lieu process. Doc. 62 at 18.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In evaluating a motion to dismiss under Rule 12(b)(6), the Court presumes the factual allegations within the complaint to be true and draws all reasonable inferences in favor of the nonmoving party. *Murguia v. Langdon*, 61 F.4th 1096, 1106 (citing *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987)). The court construes pro se pleadings liberally. *Hamilton v. Brown*, 630 F.3d 889, 893 (9th Cir. 2011).

Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570; *Iqbal*, 556 U.S. at 677–78. "[I]t demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "[B]are assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements . . . are not entitled to be assumed true." *Id.* at 681. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The complaint must contain facts that "nudge[] [the plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**IV. ANALYSIS**

Two Supreme Court decisions, *Anderson v. Celecrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992), provide the framework for analyzing challenges to ballot access. *See Election Integrity Project California, Inc. v. Weber*, 113 F.4th 1072 (9th Cir. 2024) (noting the *Anderson/Burdick* framework is the standard for assessing constitutional challenges regarding election rules); *Arizona Green Party v. Reagan*, 838 F.3d 983 (9th Cir. 2016) (applying *Anderson/Burdick* approach when considering constitutionality of 180-day petition-filing deadline).

The *Anderson/Burdick* framework has two steps. *Mecinas v. Hobbs*, 30 F.4th 890, 904 (9th Cir. 2022); *Soltysik v. Padilla*, 910 F.3d 438, 446 (9th Cir. 2018).

First, the court should consider "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate."

*Anderson*, 460 U.S. at 789; *see also Mecinas*, 30 F.4th at 904. In this step, the court needs to assess "where the burden falls on a minimal-to-severe spectrum." *Mi Familia Vota v. Hobbs*, 608 F. Supp. 3d 827, 841 (D. Ariz. 2022) (citing *Soltysik*, 910 F.3d at 444-45); *see also Short v. Brown*, 893 F.3d 671, 677 (9th Cir. 2018); *Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1027 (9th Cir. 2016) (en banc); *Dudum v. Arntz*, 640 F.3d 1098, 1113-14 (9th Cir. 2011)).

Second, the court needs to weigh the harm "against 'the precise interests put forward by the State as justifications for the burden imposed by its rule.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). This means "the more severe the burden [on candidates' rights], the more compelling the state interest must be[.]" *Arizona Green Party*, 838 F.3d at 988. "When plaintiffs' rights are subject to 'severe' restrictions, the law must be 'narrowly drawn to advance a state interest of compelling importance.'" *Montana Green Party v. Jacobsen*, 17 F.4th 919, 925 (9th Cir. 2021) (citing *Burdick*, 504 U.S. at 434). "[W]hen a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions." *Burdick*, 504 U.S. at 434 (internal quotations omitted).

Here, plaintiff fails to sufficiently allege that California's filing fee and signature-in-lieu requirements violate his constitutional rights. Under the first step of the *Anderson/Burdick* framework, the requirements do not impose a severe burden on plaintiff's First and Fourteenth Amendment rights. Plaintiff's allegations do not show that providing fifty-five days to gather 2,000 valid signatures is an undue burden for a congressional candidate. In *Andress v. Reed*, which involved ballot access for the office of U.S. Senator from California, the Ninth Circuit found that "the requirement that [the plaintiff] collect 10,000 signatures within approximately forty-five days is reasonable and constitutionally adequate." *Andress v. Reed*, 880 F.2d 239, 242 (9th Cir. 1989). Here, Verhines faces an even lower threshold: not 10,000 signatures within approximately forty-five days as upheld in *Andress*, but only 2,000 signatures within approximately fifty-five days. The requirement challenged here involves a lesser burden on signature gathering and 10 more days for collection than the requirement upheld in *Andress*.

Nor is there any allegation that the number of required signatures is excessive relative to

the number of registered voters. Defendant notes that 2,000 signatures equates to around 0.58% of registered voters in plaintiff's district.[3] Such a low percentage for the required number of signatures does not pose a severe burden on a candidate. *Breck v. Stapleton*, 259 F. Supp. 3d 1126, 1135 (D. Mont. 2017) (citing *Jenness v. Fortness*, 403 U.S. 431, 433 (1971).) ("Courts have described a 5 percent signature requirement in the context of regular general elections as a 'rather minor burden.'"); *Montana Green Party*, 17 F.4th at 925 (statewide signature requirement of 5,000 was not a severe burden where it represented "only 0.97% of the total statewide vote for President in 2016 and only 0.72% of the total registered voters in that year"); *Nader v. Cronin*, 620 F.3d 1214, 1217 (9th Cir. 2010) (60 days to collect signatures of only one percent of voters was a low burden for independent presidential candidate seeking to access Hawaii's ballot, even without the possibility to run as a write-in candidate).

Plaintiff asserts that he was unable to collect the required number of signatures after spending "over 20 hours" collecting signatures in each of the 2022 and 2024 cycles. Doc. 61 at 2–3. He asserts that this shows that the requirement to collect 2,000 signatures within fifty-five days poses a severe burden on him. Doc. 61 at 2–3. But, as defendant argues, twenty hours spread over the fifty-five day period would equate to plaintiff investing roughly 22 minutes per day to obtain signatures. *See* Doc. 62 at 17. Plaintiff's allegations do not plausibly plead that he faces a severe burden. *See Breck*, 259 F. Supp. 3d at 1138 (noting a diligent candidate, working on his or her own, could collect 400 signatures over a 5-day period).

Plaintiff conclusorily asserts that there is "99.8% failure rate" for the signature-in-lieu method. But this assertion is not supported by plaintiff's factual allegations. While plaintiff alleges that only "one out of 506 congressional candidates over the past two election cycles successfully obtained a full filing fee waiver through [the signature-in-lieu method,]" Doc. 61 at 2, the second amended complaint has no allegation concerning the number of congressional

---

[3] Citing a publicly available Secretary of State record, defendant notes: "Registration shows that there were 347,458 registered voters in Plaintiff's district. The 2,000-signature requirement therefore equates to 0.58% of the electorate." Doc. 62 at 16–17; *see also* Cal. Sec'y of State, 15-Day Report of Registration, at 33 (Oct. 12, 2024), https://elections.cdn.sos.ca.gov/ror/15day-gen-2024/complete-ror.pdf. The court takes judicial notice of this public record from the California Secretary of State.

candidates who *attempted* to use the signature-in-lieu method to qualify for the ballot. *See* Doc. 61. Plaintiff's factual allegations do not show a "99.8% failure rate" in using the signature-in-lieu process—they simply allege that one person attempted, and successfully used, that process to obtain ballot access. And they show that plaintiff spent only a minimal amount of time attempting to gather signatures and was therefore unsuccessful in gathering the required number.

In addition, California's write-in vote option also reduces the burden plaintiff faces in running for office. California law permits plaintiff to run as a write-in candidate, with only 40 to 60 signatures required for filing the nomination papers. In *Montana Green Party*, the Ninth Circuit considered the option for write-in votes as supporting the conclusion that Montana's ballot access scheme "impose[s] relatively minor burdens." *Montana Green Party*, 17 F.4th at 925.

Accordingly, under the first step of the *Anderson/Burdick* framework, plaintiff's allegations in the second amended complaint fail to state a factual basis for plaintiff's claim that the California code provisions put an undue burden on his access to California's ballot.

Under the second step of the *Anderson/Burdick* framework, California has substantial justification for the limited burden imposed by the challenged Election Code provisions. A state has a strong interest in ensuring the seriousness of a candidate seeking ballot access for national office. *See No Labels Party of Arizona v. Fontes*, 142 F.4th 1226, 1237 (9th Cir. 2025) (citing *Ariz. Libertarian Party v. Reagan*, 798 F.3d 723, 733 (9th Cir. 2015); *Chula Vista Citizens for Jobs & Fair Competition v. Norris*, 782 F.3d 520, 538 (9th Cir. 2015) (A state has an important interest in preserving the electoral process). Given the State's interests, and as the requirement to collect 2,000 signatures within fifty-five days was facially reasonable and nondiscriminatory, the second amended complaint does not sufficiently allege that this requirement poses an undue burden. *See Burdick*, 504 U.S. at 434 (citing *Anderson*, 460 U.S. at 788).

As the second amended complaint fails to plead facts sufficient to support plaintiff's claim that the California code provisions violate his rights under the First and the Fourteenth Amendments, defendant's motion to dismiss is granted.[4] As plaintiff has previously been

---

[4] As plaintiff's California voter guide claim (count 2) was previously dismissed without leave to amend, *see* Doc. 60 at 2, this order need not re-address it.

afforded leave to amend but has been unable to state a claim in the second amended complaint on which relief could be granted, dismissal of the second amended complaint with prejudice is appropriate. *Gressett v. Contra Costa Cnty.*, No. C-12-3798 EMC, 2013 WL 6354242, at *12 (N.D. Cal. Dec. 5, 2013) ("The dismissal is with prejudice because the Court previously gave Mr. Gressett an opportunity to amend."); *Martin v. Tilton*, No. 2:08-CV-01283-LDG, 2012 WL 639295, at *1 (E.D. Cal. Feb. 24, 2012) (same).

## V. CONCLUSION

Accordingly,

1. The Court declines to adopt the findings and recommendations issued on February 12, 2026, Doc. 66;
2. Defendant's motion to dismiss, Doc. 62, is granted;
3. The second amended complaint, Doc. 61, is dismissed with prejudice for failure to state a claim; and
4. The Clerk of the Court is directed to terminate any pending matters and close this case.

IT IS SO ORDERED.

Dated: November 11, 2026

UNITED STATES DISTRICT JUDGE